UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 10 CR 951 |
| v. | |
| MATTHEW MAHONEY | Honorable Gary Feinerman |

### RESPONSE TO DEFENDANT'S MOTION FOR REDUCED SENTENCE

Defendant, Matthew Mahoney, has filed a motion asking the Court to reduce his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A), relying on the threat posed by the COVID-19 pandemic. As explained below, the Court should deny defendant's motion because he has failed to establish that extraordinary and compelling reasons warrant his release and that his release would be consistent with the applicable Guidelines policy statement or the factors set forth in 18 U.S.C. § 3553(a).

### BACKGROUND

#### *Offense*

Between September 2, 2010 and November 8, 2010, defendant, who is now 37-years old, stole a combined $300,636 during nine carefully planned bank robberies. During five of those robberies, he used a gun. He was on his way to rob a tenth bank with a loaded firearm when he was arrested.

#### *Procedural History*

On April 13, 2011, a grand jury returned a 13-count indictment charging defendant with eight counts of bank robbery, in violation of 18 U.S.C. § 2113(a), and five counts of using and carrying a firearm in furtherance of a crime of violence, in

violation of 18 U.S.C. § 924(c). (R. 34, Indictment.) On September 6, 2011, defendant

pled guilty to three counts of bank robbery and one count of using and carrying a

firearm in furtherance of a crime of violence. (R. 53, 9/6/11 Minute Order; R. 54, Plea

Agreement.) Defendant also stipulated to robbing six other banks. Under the terms

of the plea agreement, the parties agreed pursuant to Federal Rule of Criminal

Procedure 11(c)(1)(C) that the sentence would include a term of imprisonment within

the applicable Guidelines range of 235 to 272 months. (R. 54, Plea Agreement at 26,

par. 11; PSR at 5, lines 35-36.) The Court sentenced defendant to 20 years'

imprisonment. (R. 77, Judgment.)

Defendant is currently housed at Coleman Low FCI, with a projected release

date of April 27, 2028. According to the BOP's website, none of the 1,894 inmates at

Coleman Low FCI have confirmed active COVID-19 cases, and four staff members

have confirmed cases.

### *The BOP's Response to COVID-19*

As reported on the BOP's website, in January 2020 the BOP began a course of

action to respond to the spread of COVID-19.[1] Phase One of BOP's COVID-19 Action

Plan included the creation of an agency task force working in conjunction with

subject-matter experts from the Center for Disease Control and Prevention ("CDC")

and the World Health Organization to review guidance about best practices to

mitigate transmission. *Id.* On March 13, 2020, as part of Phase Two of its COVID-19

---

[1]   Federal   Bureau   of   Prisons   COVID-19   Action   Plan,   March   13,   2020,
https://www.bop.gov/resources/news/20200313_covid-19.jsp (last visited June 26, 2020).

Action Plan, the BOP began implementing various measures to mitigate the spread of the virus. Those measures included suspending social visits, in-person legal visits, all inmate movement, and staff travel. The BOP also began implementing procedures to quarantine and screen inmates and staff for the virus, which included screening all newly arriving inmates for exposure risk factors and symptoms, quarantining asymptomatic inmates with exposure risk factors, and isolating and testing symptomatic inmates with exposure risk factors. *Id.*

Subsequent phases of BOP's COVID-19 Action Plan included the authorization of inmate movement in order to avoid overcrowding at BOP facilities. However, such movements were limited to inmates who had been in custody for more than 14 days and who had been subjected to exit screening to ensure that the prisoner had no COVID-19 symptoms (fever, cough, shortness of breath) and a temperature of less than 100.4 degrees.[2] Subsequent phases of BOP's COVID-19 Action Plan included quarantining and isolating all new inmates, with asymptomatic inmates being quarantined for 14 days and symptomatic inmates being isolated until testing negative for COVID-19, modifying operations to maximize social distancing, maximizing telework for staff members, and conducting inventory reviews of all cleaning and medical supplies to ensure ample supplies were on hand and ready to be distributed as necessary at BOP facilities.[3]

---

[2]  Updates to BOP COVID-19 Action Plan, March 19, 2020, https://www.bop.gov/resources/news/20200319_covid19_update.jsp%20 (last visited June 26, 2020).

[3]  Bureau of Prisons Update on COVID-19, March 24, 2020, https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_covid19_update.pdf (last visited June 26, 2020); COVID-19 Action Plan: Phase Five, March 31 2020,

On April 1, 2020, as part of Phase 5 of its COVID-19 Action Plan, the BOP secured all inmates to their assigned cells or quarters to decrease the spread of the virus.[4] On April 13, 2020, as part of Phase 6 of its COVID-19 Action Plan, the BOP continued to secure all inmates to their assigned cells or quarters to decrease the spread of the virus.[5] Thereafter, on May 18, 2020, the BOP extended the implementation of Phase 7 of its COVID-19 Action Plan until June 30, 2020.[6] Phase 7 extends all measures from Phase 6, including measures to contain movement and decrease the spread of the virus. Further details and updates of BOP's modified operations are available on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

## ARGUMENT

### A.    Legal Standard

As amended by Section 603(b) of the First Step Act of 2018, Pub. L. 115-391, Title 18, United States Code, Section 3582(c)(1)(A) provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days

---

https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp          (last          visited June 26, 2020).

[4]          COVID-19          Action          Plan:          Phase          Five,          March          31,          2020, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp          (last          visited June 26, 2020).

[5]          COVID-19          Action          Plan:          Phase          Six,          April          13,          2020, https://www.bop.gov/resources/news/pdfs/20200414_press_release_action_plan_6.pdf          (last visited June 26, 2020).

[6]          Bureau          of          Prisons          COIF-19          Action          Plan:          Phase          Seven,          May          20          2020, https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp          (last          visited June 26, 2020).

from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Under this statute, a sentence reduction must be consistent with applicable policy statements issued by the U.S. Sentencing Commission. § 3582(c)(1)(A). In addition to finding "extraordinary and compelling" reasons for the reduction, the Court must also find that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," per U.S.S.G. § 1B1.13(2). Finally, the Court must consider the 18 U.S.C. § 3553 sentencing factors to the extent relevant. *Id.*

Thus, in order to obtain relief under § 3582(c)(1)(A)(i), the defendant must show that:

(1) he has requested relief from the BOP and exhausted any administrative appeals in that process;

(2) there exist extraordinary and compelling reasons that warrant a sentence reduction;

(3) the requested reduction is consistent with the policy statements issued by the sentencing commission in Guideline §1B1.13, including the requirement that "the defendant is not a danger to the safety of any other person or to the community"; and

(4) the reduction is warranted in light of the factors listed in 18 U.S.C. § 3553.

## B. Defendant Has Complied with Section 3582(c)(1)'s Exhaustion Requirement.

According to 18 U.S.C. § 3582(c)(1), a defendant is free to bring a motion for compassionate release after he has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or 30 days have elapsed since the receipt of such a request by the warden of the defendant's facility, whichever is earlier. Defendant sent a request to the warden for a reduction of sentence or compassionate release on or about April 16, 2020, and the warden denied that request on May 12, 2020. Because more than 30 days have elapsed since the warden received defendant's request, defendant has satisfied the statutory exhaustion requirement set forth in § 3582(c)(1)(A).

## C. Defendant has not established that "extraordinary and compelling reasons" warrant his release at this time.

Defendant fails to satisfy the standard for release under § 3852(c)(1)(A)(i). As pertinent here, defendant is not at least 70 years old and has not served at least 30 years in prison; thus, he is ineligible to seek compassionate release under § 3852(c)(1)(A)(ii). Instead, defendant is only eligible to seek release on the grounds that, "after considering the factors set forth in section 3553(a) … extraordinary and

6

compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Guideline § 1B1.13 provides that under § 3852(c)(1)(A), a court may reduce a term of imprisonment, after considering the § 3553(a) factors, if three criteria are satisfied: (1) "extraordinary and compelling reasons warrant the reduction," (2) "the defendant is not a danger to the safety of any other person or to the community," and (3) "the reduction is consistent with this policy statement." Application Note 1 to Guideline § 1B1.13 identifies factors that may constitute "extraordinary and compelling reasons" for a sentence reduction, including a defendant's medical condition, age, family circumstances, and an open-ended category for "other reasons." In addition, any reduction must be supported by "the factors set forth in [18 U.S.C. §] 3553(a)." U.S.S.G. § 1B1.13; *see also United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019); *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019).

With respect to applicable policy statements, the Sentencing Commission concluded before the passage of the First Step Act that "extraordinary and compelling reasons" were limited to the following four scenarios:

(1)     The defendant suffered from a "terminal illness" or his physical or mental condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and

7

from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

(2)     The defendant was at least 65 years old, experiencing a serious deterioration in physical or mental health because of the aging process, and served the lesser of 10 years or 75% of his sentence. *Id.* § 1B1.13 cmt. n.1(B).

(3)     The defendant's family circumstances include either the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. *Id.* § 1B1.13 cmt. n.1(C).

(4)     There was "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D).

The changes to 18 U.S.C. § 3582(C)(1)(A) made by the First Step Act altered the procedure through which compassionate release could be sought, that is, by allowing defendants to bring their requests to court after exhausting their administrative remedies, but they did not alter the grounds for granting relief.

Defendant asserts that he has chronic lung ailments and is prone to infections and that these conditions constitute "extraordinary and compelling reasons" warranting release, in light of the COVID-19 pandemic. (R. 105, Mot. at 1). As an initial matter, defendant's BOP records do not support defendant's claim that he has

a "chronic lung ailment," or that he is prone to infections—much less that he suffers from a medical condition or receives medical treatment that causes such a predilection. Moreover, neither unspecified "chronic lung conditions," nor an unspecified tendency to get infections is a condition recognized by the CDC as increasing an individual's risk of serious illness from COVID-19. Thus, defendant has failed to establish that he suffers from a medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility, and from which he or she is not expected to recover," or an "extraordinary and compelling reason" for release. *See* U.S.S.G. § 1B1.13 cmt. n.1(A). To the contrary, defendant's medical records reflect that he is in stable health and that BOP medical staff have been caring for him appropriately. (*See* Ex. A.).

Defendant makes generalized complaints about the conditions at Coleman Low FCI and suggests that conditions at the institution constitute an extraordinary and compelling reason for release. (R. 105, Mot. at 3.) According to the BOP's website, however, none of the 1,894 inmates at Coleman Low FCI have confirmed active COVID-19 cases, and only four staff members do. In denying other early release motions made by Coleman Low FCI inmates, courts have recognized that Coleman has experienced a low rate of infection and that the steps being taken by BOP personnel there seem to be working. *See United States v. Calloway*, No. 3:16-cr-121, 2020 WL 3510684, at *2 (M.D. Tenn. June 29, 2020) (in denying motion made by an inmate with high blood pressure and high cholesterol, noting that at Coleman Low "[t]he disease appears relatively well controlled"); *United States v. Leon*, No. 2:19-cr-

9

14043, 2020 WL 2767360, at *2 (S.D. Fla. May 28, 2020) ("BOP has implemented mitigation measures in accordance with its role to protect the inmates within its facilities. The Court has been presented with no information that would indicate that these measures will be ineffective at FCI Coleman – Low."); *United States v. Rampulla*, No. 18-cr-60276, 2020 WL 3035235, at *5 (S.D. Fla. June 4, 2020) ("Defendant also does not persuade the Court that current procedures in place or resources available at FCI Coleman are insufficient to protect him and other at-risk individuals."); *United States v. Torres*, No. 18-414, 2020 WL 3498156 (E.D. Penn. June 29, 2020) (denying motion made by asthmatic inmate).

While the government certainly recognizes the legitimate concern of inmates regarding the risk of infection, this concern does not suffice to warrant release, when evaluated against the Sentencing Commission's policy statement set forth at Guideline § 1B1.13, and particularly the examples listed in Application Note 1. None of the provided examples supports the proposition that a generalized fear of a future illness, not even during a pandemic, constitutes an "extraordinary and compelling reason" warranting relief under § 3582(c)(1)(A)(i).

Judges in the Northern District of Illinois, and courts across the country, have held that neither the COVID-19 pandemic generally, nor the presence of the disease in a particular correctional facility, in and of itself constitutes "extraordinary and compelling reasons" under § 3582(c)(1). *See United States v. Shannon*, No. 13 CR 535, 2020, at *1, 2020 WL 3489491, at *2 (N.D. Ill. June 26, 2020); *accord, United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in

society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

Even if defendant had established an extraordinary and compelling reason for a reduction of sentence or release, he would not automatically be entitled to relief under 18 U.S.C. § 3582(c)(1). Pursuant to the statute and the applicable policy statement, the Court must also consider whether defendant poses a danger to the community, as well as all other pertinent § 3553(a) factors, including defendant's history and characteristics, the risk of recidivism he poses, the time remaining on his sentence, the quality of his release plan, and the impact of BOP's efforts to maintain the safety of inmates. These factors militate against early release in this case.

The Court gave careful consideration to the § 3553(a) factors at sentencing, and the Court's rationale in selecting the sentence remains applicable today. There can be no doubt that defendant's criminal conduct was serious. As a bank teller for two separate banks prior to his criminal conduct in this case, he knew that bank policies required employees to comply with robbers' demands. (PSR at lines 49–50.) Yet he chose to repeatedly use a gun to rob banks of money—money he did not need. He carefully planned his robberies, using the Internet to select his targets and review his robberies, casing certain banks before carrying out robberies, creating cover stories to fool those closest to him, spending thousands of dollars on a car, opening a savings account to store his proceeds, using a gun that he stole from his mother, purchasing a safe that he used to store over $200,000, and causing one of his victims

to miss work for months and receive needed counseling to address the fear defendant created in her.

On September 15, 2010—after defendant had robbed one bank on September 2nd and robbed two banks and cased two others on September 8th—defendant testified for the government as a victim teller in a federal jury trial before Judge Kendall. Defendant explained during his testimony how one accesses the bank vault and described bank security measures. Further, defendant explained that bank employees were trained to comply with a robber's demands because "[t]he bank doesn't want anybody hurt."

Three days after he testified, defendant began robbing banks in a manner that is eerily similar to the bank robbery about which he testified. Specifically, he began accessing the banks' vaults after pointing his gun at employees while threatening to kill them. During the first robbery after he testified, defendant pointed his gun at a bank employee's chest and demanded money without bait bills and dye packs. During the second, defendant pointed his gun at a bank employee, demanded money from the vault, and threatened, "Don't make me kill anyone here. I know you have money in the vault, and you need two people to open the vault." He robbed four more banks with a gun in early November. During each of those robberies, he was able to access the vault to steal tens of thousands of dollars. This conduct reveals defendant as a person who poses a serious risk of recidivism and a danger to the community.

Defendant has failed to establish an extraordinary and compelling reason for a reduced sentence and that a reduction of his sentence would be consistent with the

12

applicable policy statement or § 3553(a) factors. Thus, defendant should be required to serve the remainder of the sentence imposed by this Court.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that defendant's motion be denied.

Date: July 7, 2020

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:    */s/ Christopher J. Stetler*
       CHRISTOPHER J. STETLER
       Assistant United States Attorney
       219 South Dearborn Street, 5th Floor
       Chicago, Illinois 60604
       (312) 353-7602