UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 10 CR 951 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| MATTHEW MAHONEY, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

The court sentenced Matthew Mahoney to a 240-month prison term for three counts of bank robbery, 18 U.S.C. § 2113(a)—he admitted to committing nine bank robberies over a two-month period, but formally pleaded guilty to three and stipulated to the six others—and one count of using a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A)—though he used (but did not fire) a gun in five of the robberies. Doc. 53; Doc. 54 at 1, 8-16; Doc. 77 at 1-2. The parties had agreed under Criminal Rule 11(c)(1)(C) that the custodial sentence would fall within the applicable Guidelines range of 235-272 months. Doc. 54 at 26.

Mahoney is currently housed at Coleman Low FCI and has a projected release date of April 27, 2028. Doc. 112 at 2. Before the court is his motion for a reduced sentence, known colloquially as compassionate release, under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Doc. 98. He satisfies all requirements of such relief, and the court reduces his sentence to time served.

First, as the Government acknowledges, Doc. 112 at 6, Mahoney exhausted his administrative remedies by first seeking relief from the Bureau of Prisons. *See* 18 U.S.C. § 3582(c)(1)(A).

1

Second, there are "extraordinary and compelling reasons" that warrant a sentence reduction. *Ibid.*; U.S.S.G. § 1B1.13. Those reasons do *not* arise under Application Note 1(D) of U.S.S.G. § 1B1.13. *See United States v. Rollins*, 2020 WL 3077593 (N.D. Ill. June 10, 2020). They do arise, however, under Application Note 1(A)(ii), which applies where the defendant has "serious physical or medical condition[s] … that substantially diminish[] [his] ability … to provide self-care within the environment of a correctional facility and from which he … is not expected to recover." U.S.S.G. § 1B1.13, n.1(A)(ii).

Mahoney has such serious medical conditions. The medical records filed in conjunction with his motion are voluminous, Doc. 103, 113, 118, but his most serious medical conditions concern his lungs. In December 2007, Mahoney suffered a collapsed lung, requiring hospitalization, a chest tube replacement, and two subsequent pulmonary surgeries to re-expand the lung. Doc. 118-1 at 2 (letter from his treating physician). Although he recovered, CT scans of his chest indicated blebs, or "bubbles or pockets of air between the lung lining and the chest wall" that "are prone to rupture and recurrent lung collapse [if exposed to] further pulmonary complications." *Ibid*. Mahoney also suffers from a chronic inability to fight off infection, as evidenced by a history of ear and skin infections, Doc. 105 at 2; Doc. 113 at 1-5; a failure to heal from back surgery, Doc. 103; and a diagnosis of MRSA, an antibiotic resistant bacterial staph infection, Doc. 118-2 at 4.

While Mahoney's medical problems might pose a manageable health risk in ordinary times, placing him well outside the category of inmates covered by Application Note 1(A)(ii), those problems impose on him an acute and unacceptable risk of becoming severely ill or dying should he contract COVID-19. *See* CDC, *Coronavirus Disease: People with Certain Medical Conditions* (July 30, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

precautions/people-with-medical-conditions.html (including "having damaged or scarred lung tissues" in a list of "underlying medical conditions" that put an individual "at increased risk for severe illness from COVID-19," regardless of age). That risk cannot be overlooked, as prison facilities face an extraordinary challenge in preventing the spread of COVID-19 among their inmate populations, with prisoners being some 5.5 times more likely to contract COVID-19 than the population as a whole and, after controlling for age and sex, three times more likely to die from it. *See* Brendan Saloner, Ph.D., et al., *Covid-19 Cases and Deaths in Federal and State Prisons*, JAMA (July 8, 2020), https://jamanetwork.com/journals/jama/fullarticle/2768249.

      The risk here is even more acute because Coleman Low FCI is in Florida, which is in the midst of a massive surge in COVID-19 cases. *See* Florida Department of Health, *Florida COVID-19 Response* (July 31, 2020), https://floridahealthcovid19.gov/#latest-stats. That surge has manifested at Coleman Low FCI, where the infected male inmate population jumped (literally) from zero to sixty in the past few weeks, and where several staff members have become infected as well. Doc. 112 at 9; Doc. 117 at 2; Doc. 120. Although the Government notes that the Bureau in general and Coleman Low FCI in particular have admirably implemented numerous safety precautions, *ibid*., even competent, well-intentioned officials face an arduous task of protecting otherwise healthy inmates, let alone someone with the serious risks faced by Mahoney. Given all this, Mahoney's medical conditions and the COVID-19 pandemic "substantially diminish[] [his] ability … to provide self-care within the environment of [his] correctional facility." U.S.S.G. § 1B1.13, n.1(A)(ii).

      Third, a sentence reduction is warranted in light of "the factors set forth in [18 U.S.C. §] 3553(a)." 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. The court is well aware that Mahoney's crimes were very serious. Any bank robbery is serious, and Mahoney committed

3

nine of them, Doc. 54, and law enforcement apprehended him while he was en route to what would have been his tenth, Doc. 112 at 1. Mahoney was a bank teller himself and used his knowledge to plan and conduct the robberies. *Id*. at 11. He pointed a loaded gun at bank employees during some of the robberies, causing them to suffer unimaginable fright and resulting in one missing work for months while receiving counseling. *Id*. at 11-12; Doc. 54 at 1-16. Mahoney's very serious crimes deserve a very substantial sentence.

The question here is whether, considering the § 3553(a) factors, Mahoney has already received sufficient punishment. At the time he committed the robberies, Mahoney was addicted to heroin and had no prior arrests or convictions. Doc. 117 at 9. He has spent nine years, eight months in prison—56% of his total sentence when good-time credits are considered. *Ibid*. Given the risk of serious illness or death Mahoney faces were he to remain in prison, that penalty reasonably accounts for the seriousness of his crimes, provides just punishment for them, and promotes respect for the law. As for deterrence, ten years in prison sends a clear signal to those considering bank robbery and to Mahoney himself. *Id*. at 10. And as evidenced by his guilty plea and his statements at his sentencing hearing and in conjunction with this motion, Mahoney has taken responsibility for his actions, demonstrated genuine remorse, and poses a low risk of recidivism. Doc. 98 at 6; Doc. 117 at 10. The court accordingly finds that a sentence reduction to time served is appropriate in light of the § 3553(a) factors.

Fourth, Mahoney "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13. He is remorseful and has taken affirmative steps to reform. He obtained his CPR certification and serves as the Clerk at Coleman Low FCI, responsible for maintaining inmate work assignments, inmate payroll, and the work detail roster. Doc. 98 at 5. Mahoney's mother, a retired police officer, has volunteered to house him upon his release. *Ibid*.; Doc. 117 at

4

9. The Bureau's decision to place Mahoney in a low security facility, combined with his low PATTERN score for recidivism, indicate that he is not likely to recidivate. *Ibid.* Any remaining concerns can and will be addressed in the restrictions imposed by Mahoney's supervised release.

The court grants Mahoney's § 3582(c)(1)(A) and reduces his sentence to time served. An amended judgment and commitment order will follow shortly. The Government and/or the Probation Office are invited to move the court to make any appropriate modifications to the conditions of Mahoney's supervised release.

July 31, 2020 _____
United States District Judge

5